James **FAIRROW, Jr.,** Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2004–SC–0293–MR.

Supreme Court of Kentucky.

Oct. 20, 2005.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice
COOPER.

A Hopkins Circuit Court jury convicted Appellant, James Fairrow, Jr., of two counts of trafficking in a controlled substance in the first degree, KRS 218A.1412, and found him to be a persistent felony offender in the first degree, KRS 532.080(3). He received enhanced sentences of thirty-five years in prison for each trafficking conviction, which were ordered to run concurrently. Appellant appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting five

claims of reversible error: (1) the admission of improper character evidence; (2) the use of a prejudicial nickname during trial; (3) the failure to excuse a juror for cause; (4) the failure to suppress an in-court identification of Appellant as a result of an unduly suggestive show-up; and (5) the failure to grant Appellant directed verdicts of acquittal on both counts of trafficking in a controlled substance. For the reasons stated herein, we affirm.

Appellant's convictions arose out of two sales of cocaine to Ms. Gay Royal, a confidential informant (C.I.) for the Madisonville Police Department. Royal told the police that she wanted to "get straight" and needed some money to leave town, and she offered to participate in a controlled drug buy. The police agreed.

On the morning of July 13, 2003, Detectives Lantrip and Bean of the Madisonville Police Department arrived at the home of Royal's mother, where the drug buy would occur. They performed a cursory search of Royal (asking her to empty her pockets and take off her shoes) to ensure she did not have drugs on her person that could be used to falsely incriminate someone, but did not search the house. Around 10:40 a.m., Royal telephoned a man whom she referred to as "J–Man," and whom both she and the police believed to be Appellant. Royal arranged a drug deal as the police recorded the conversation on audiotape. The detectives equipped Royal with an audiotape to secretly record the transaction. They also furnished her with thirty dollars in cash and recorded the serial numbers of the bills.

A short time later, a black Ford Crown Victoria drove up to the house with a male sitting in the front passenger seat. As the police videotaped the encounter, Royal approached the car on the passenger side, momentarily reached inside, then returned to the house. She gave cocaine to the police which she claimed she purchased from Appellant with the money. She was not searched after the completion of the transaction.

Soon thereafter, as recorded by a surveillance camera in the Grapevine Pantry, a convenience store near Royal's mother's residence, Appellant arrived at the store in a black Ford Crown Victoria and purchased a money order with cash. Appellant stipulated at trial that the signature on the money order was his. A bill was later found in the Grapevine Pantry's safe with a serial number that matched one on the bills provided to Royal for use in the earlier drug buy.

Around 1:00 p.m. the same day, Detectives Lantrip and Bean set up a second controlled drug buy using Royal as the C.I. They followed the same general procedures employed earlier, but this time failed to search Royal or the house before or after the transaction. They observed the same black Ford Crown Victoria come to the house. Royal again left the house with money given to her by the detectives and returned with cocaine. The drug transaction was recorded on videotape and audiotape. Around 9:00 p.m., Brittany Brown, a clerk at the Grapevine Pantry, identified Appellant from a photograph shown to her by police as the man to whom she had sold a money order earlier that day. At trial, Detective Lantrip identified the man in the Grapevine Pantry's surveillance video as Appellant and his car as the vehicle used in both drug transactions.

## I. CHARACTER EVIDENCE.

Appellant first asserts that the trial court erred by permitting the Commonwealth to introduce improper character evidence, specifically, by permitting Detective Lantrip to testify that Royal was a "reliable" informant whose previous work resulted in numerous convictions.

Prosecution: Has she, had she been reliable in the past?

Lantrip: Yes she had.

Defense Attorney: Objection, your Honor. Calls for a conclusion as to the facts as to whether she is reliable or not.

Prosecution: Well I think he can.

Judge: The question was, was she relied on.

Prosecution: Reliable, as far as her previous work.

Judge: Well, develop that and I mean, I think it can be. Get into it.

Prosecution: In the past, approximately how many cases has she worked for you in the past?

Lantrip: I had thought about that. I can count over five, just immediately. I would have to go back. It's been over a few years.

Prosecution: Okay.

Lantrip: I could say numerous.

Prosecution: The cases that she worked, did they have positive results?

Lantrip: Every case I am aware of resulted in a conviction.

■ Testimony about a C.I.'s reliability is appropriate in an affidavit taken to establish probable cause when the police are seeking to obtain a search warrant. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *Lovett v. Commonwealth,* 103 S.W.3d 72, 77–79 (Ky.2003). However, admission of such evidence at a criminal trial is a different matter. Lantrip's testimony that Royal was a reliable informant whose work had always resulted in convictions was inadmissible character evidence under KRE 404(a). *Caudill v. Commonwealth,* 120 S.W.3d 635, 659–60 (Ky.2003) (testimony that victim was a "cautious" person was inadmissible character evidence). The

rule states that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion ...." According to Professor Lawson:

> The word "character," used most narrowly and accurately, describes the personal disposition or personality of an individual.... [A] person's character is an intermediate fact that is offered to prove some other ultimate fact, primarily to support an inference that a person acted (or did not act) in conformity with his or her character on a given occasion.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.15[2], at 97 (4th ed. LexisNexis 2003).

At first blush, it might seem that this evidence was admissible under KRE 608, which permits the admission of character evidence to attack or support a witness's credibility.[1] The rule provides in pertinent part that:

> (a) Opinion and reputation evidence of character. The credibility of a *witness* may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on

1. The trial took place on February 9 and 10, 2004, after the July 2003 revision of KRE 608.

cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness . . . .

KRE 608 (emphasis added).

■ Initially, KRE 608 could not apply to Lantrip's testimony because he was the Commonwealth's first witness and Royal had not yet testified when he attempted to bolster her credibility. *United States v. Hernandez*, 873 F.2d 925, 929 (6th Cir. 1989) ("Critical to the resolution of this issue, however, is the fact that at the time [the police detective] was questioned about [the informant's] truthfulness and reliability, the informant has yet to take the stand and testify himself. Because [the informant] was not a 'witness,' Rule 608 is inapplicable."). Even if Royal could be regarded as a witness (because she testified later), Lantrip's testimony was still inadmissible because KRE 608(a)(2) requires credibility to be attacked before it is supported. *Brown v. Commonwealth*, 983 S.W.2d 513, 515 (Ky.1999) (citing *Pickard Chrysler, Inc. v. Sizemore*, 918 S.W.2d 736, 740 (Ky.App.1995)). Since Lantrip was the Commonwealth's first witness, Royal's credibility as a witness had not been attacked prior to Lantrip's testimony. However, Royal's credibility was attacked on cross-examination during her subsequent testimony, and we have held that when rehabilitation evidence is admitted before credibility is attacked, any error is harmless as long as credibility is, in fact, later impeached. *Reed v. Commonwealth*, 738 S.W.2d 818, 821 (Ky.1987) (citing *Summitt v. Commonwealth*, 550 S.W.2d 548, 550 (Ky.1977)). Thus, if Lantrip's testimony had focused on her character for truthfulness (instead of reliability), the evidence in question would have been proper rehabilitation of her credibility under KRE 608 despite having been erroneously admitted out of order.

■ The rule, however, "leaves no room for proof of anything other than the specific trait of character that is pertinent to credibility, namely truthfulness or untruthfulness, a restriction that has been part of Kentucky's law for at least half a century." Lawson, *supra*, § 4.20[3], at 302–03 (internal quotation marks omitted) (quoting Minutes, Evidence Rules Review Commission, Commentary on Amended KRE 608 (September 28, 2001)). *See also McHargue v. Perkins*, 295 S.W.2d 301 (Ky.1956) (construing former CR 43.07, which contained almost identical language as KRE 608(a)(1)); *People v. Bouchee*, 400 Mich. 253, 253 N.W.2d 626, 632–33 (1977) ("[C]haracter evidence offered to impeach or support a witness's credibility, other than evidence of prior conviction for crime, must be limited to the particular character trait of truthfulness or untruthfulness.") (footnote omitted). While a character for "truthfulness" might arguably be inferred from a character for "reliability" under some circumstances, Lantrip was not referring to Royal's truthfulness as a witness but to her "reliability" as an informant, *i.e.*, in the context of the primary meaning of "reliable," *viz*: "dependable." *Webster's Third New International Dictionary of the English Language Unabridged* 1917 (1993). In other words, he was referring to the fact that her work as a confidential informant always resulted in successful "buys" that led to convictions. The evidence was offered to prove that she had accomplished two more successful "buys" from Appellant for which he should be convicted. Obviously, admission of this testimony constituted error.

■ Lantrip's testimony that Royal's work for the police had always resulted in convictions was also inadmissible because character cannot be proven by specific instances of conduct. When admissible, character may only be proven by "testimo-

ny as to general reputation in the community or by testimony in the form of opinion." KRE 405(a). "By providing only for the use of reputation or opinion evidence in this situation, the rule plainly implies a prohibition on evidence of particular acts of conduct." Lawson, *supra*, § 2.20[4], at 116. *See also Purcell v. Commonwealth*, 149 S.W.3d 382, 399 (Ky.2004). In limited circumstances, specific instances of conduct may be admissible as character evidence. *See* KRE 405(c) & KRE 608(b). However, neither of those rules applies in this case.[2] Therefore, Lantrip's testimony that Royal's work with the police always resulted in convictions was inadmissible. *See United States v. Murray*, 103 F.3d 310, 321–23 (3d Cir.1997) (admission of similar evidence held to be reversible error when admitted after credibility of confidential informant attacked); *United States v. Taylor*, 900 F.2d 779, 780–81 (4th Cir. 1990) (same).

 However, admission of Lantrip's testimony does not require reversal for a new trial because the error was not properly preserved for appellate review. KRE 103(a)(1). Appellant's objection to Lantrip's testimony as to Royal's reliability was not on the ground that it was improper character evidence but on the ground that it "calls for a conclusion as to the facts as to whether she is reliable or not." When Lantrip later testified to the facts supporting his "conclusion," *i.e.*, that the cases Royal worked always resulted in convictions, Appellant did not object at all. When a party states grounds for an objection at trial, that party cannot assert a different basis for the objection on appeal.

*Tamme v. Commonwealth*, 973 S.W.2d 13, 33 (Ky.1998); *Ruppee v. Commonwealth*, 821 S.W.2d 484, 486 (Ky.1991). Nor are we satisfied that the admission of improper evidence of the character of a mere witness affected Appellant's substantial rights and constituted manifest injustice so as to require reversal as palpable error. KRE 103(e).

## II. NICKNAME.

 Appellant filed a motion in limine to suppress any reference at trial to his nickname, "J–Man," asserting that the jury could assume from the fact that he had a nickname that he was, in fact, a criminal. Appellant was repeatedly identified on the audiotapes as "J–Man," so removing any such reference at trial would have required suppression or substantial redaction of the audiotapes. The Commonwealth objected because Royal and Lantrip knew Appellant primarily as "J–Man," the name was only a contraction of Appellant's real name, "James," and that he had always been known as "J–Man," even in high school. The trial court noted that it was not as if Appellant's nickname was "Crack–Man," and overruled the motion, finding that the nickname did not suggest criminal activity, thus would not unduly prejudice Appellant. However, the trial court believed it would be disrespectful for the witnesses to otherwise refer to Appellant by his nickname and ordered all witnesses to refer to Appellant by his given name when testifying from the witness stand.

---

**2.** Under KRE 405(c), specific instances of conduct are admissible if a person's character is an essential element of a charge, claim, or defense. Those circumstances are not present in this case. Under KRE 608(b), testimony about specific instances of conduct to attack or support a witness' credibility may not

be proved by extrinsic evidence, but may be elicited on cross-examination of the witness whose conduct is at issue. Here, the testimony in question was elicited during the direct examination of Detective Lantrip, not during cross-examination. Thus, KRE 608(b) does not apply.

The trial court's decision whether to exclude evidence because of its prejudicial effect is reviewed for an abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* We agree that Appellant's nickname does not suggest criminal activity; thus, the trial court's decision to allow limited use of the nickname was more than reasonable and certainly not an abuse of discretion.

### III. FAILURE TO EXCUSE JUROR FOR CAUSE.

Appellant asserts error in the trial court's failure to excuse Juror No. 87 for cause. Appellant exercised all of his peremptory strikes and Juror No. 87 actually sat as a juror on the case. Juror No. 87's son had troubles with alcohol and may have been involved with drugs, indicating possible bias against a defendant charged with trafficking in a controlled substance. However, when questioned, Juror No. 87 said she could be fair and impartial.

"When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36. However, prospective jurors are qualified to sit on a case provided reasonable grounds exist to believe they can render a fair and impartial verdict based solely on the evidence presented at trial. *Maxie v. Commonwealth*, 82 S.W.3d 860, 863 (Ky.2002); *Sanders v. Commonwealth*, 801 S.W.2d 665, 670 (Ky.1990). Whether a juror should be excused for cause is a matter within the discretion of the trial court and will be disturbed only upon a showing of an abuse of that discretion. *Maxie*, 82 S.W.3d at 863; *Caldwell v. Commonwealth*, 634 S.W.2d 405, 407 (Ky.1982). The question becomes whether it was reasonable for the trial court to find that Juror No. 87 was qualified to sit as a juror. *Maxie*, 82 S.W.3d at 863.

Juror No. 87 assured the trial court that she could find Appellant not guilty if the evidence was insufficient to convict. That assurance provided the trial court with a reasonable basis for concluding that she could be fair and impartial. *Id.; Sanders*, 801 S.W.2d at 670. Thus, the trial court did not abuse its discretion in overruling the motion to excuse Juror No. 87 for cause.

### IV. SHOW–UP IDENTIFICATION.

Appellant asserts the trial court erred by allowing the Grapevine Pantry clerk, Brittany Brown, to identify him at trial based on her earlier out-of-court identification from a photograph shown to her by the police. During the evening on the day of the controlled drug buys, the police showed Ms. Brown a photograph of Appellant and asked if he was the man who had purchased the money order from her. She responded in the affirmative. Because only one person is presented for identification, such "show-ups" are highly suggestive and must be viewed with caution. *Rodriguez v. Commonwealth*, 107 S.W.3d 215, 218 (Ky.2003); *Myers v. Commonwealth*, 499 S.W.2d 277, 279 (Ky.1973).

The United States Supreme Court has identified five factors to weigh in assessing the possibility that the witness would make an irreparable misidentification from a show-up, based upon the totality of the circumstances.

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the

crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). We have adopted this five-part test. *Savage v. Commonwealth,* 920 S.W.2d 512, 513–14 (Ky.1995); *Wilson v. Commonwealth,* 695 S.W.2d 854, 857 (Ky.1985).

In the case *sub judice,* Brown had an unobstructed view of Appellant in a well-lit store during broad daylight. She testified that although she did look down to operate the money order machine, she was paying attention and observed Appellant. Furthermore, her description of Appellant provided prior to the show-up proved to be fairly accurate. Brown was very certain that the person in the photograph was the man who bought the money order. She testified that he was a regular customer at the store and that she was already familiar with him. Lastly, the time period between when Appellant purchased the money order and Brown's identification was around ten hours, certainly not an unreasonably lengthy period of time.

Although it would have been preferable for the police to have shown Brown an array of photographs to overcome the inherent suggestiveness of the show-up procedure, the totality of circumstances, as illustrated by the five *Neil* factors, indicates that the show-up identification did not violate Appellant's due process rights.

## V. SUFFICIENCY OF THE EVIDENCE.

Finally, Appellant asserts that the evidence was insufficient to support his convictions and the trial court should have sustained his motions for directed verdicts of acquittal. On a motion for directed verdict of acquittal, all fair and reasonable inferences are drawn in the Commonwealth's favor. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). However, judgment as to the credibility of witnesses and the weight of the evidence are left exclusively to the jury. *Id.; see also Commonwealth v. Smith,* 5 S.W.3d 126, 129 (Ky.1999). On appellate review, we determine whether, under the evidence viewed as a whole, it was clearly unreasonable for the jury to have found the defendant guilty. *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky.1983).

More than enough evidence was introduced at trial to support Appellant's conviction. Royal testified that Appellant was the man who sold her the cocaine, and the transactions were recorded on audiotape and videotape. Appellant is shown on videotape entering the Grapevine Pantry and purchasing a money order, and he identified the signature on the money order as his own. Brown Identified Appellant as the man who purchased the money order with cash. One of the bills given to Royal by Detective Lantrip was found in the Grapevine Pantry's safe. The evidence was sufficient to support Appellant's convictions.

Accordingly, the judgments of conviction and sentences imposed by the Hopkins Circuit Court are affirmed.

All concur.