**Robert BAKER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–CA–001122–MR.

Court of Appeals of Kentucky.

March 19, 2010.

Rehearing Denied Aug. 25, 2010.

Jamesa J. Drake, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Jeffrey A. Cross, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, CAPERTON and KELLER, Judges.

## OPINION

KELLER, Judge.

Robert Baker (Baker) appeals his convictions of first-degree trafficking in a controlled substance and possession of drug paraphernalia, second or subsequent offense, and for being a persistent felony offender in the first degree. The sole issue raised by Baker is whether the trial court improperly permitted the Commonwealth to bolster the testimony of one of its witnesses. Having reviewed the record and the arguments of counsel, we affirm.

## FACTS

The underlying facts are not in dispute. On January 11, 2007, members of the Lexington Police Department met with Robert Wilson (Wilson) in order to conduct controlled purchases of illegal drugs. The officers searched Wilson and his automobile, equipped Wilson with a recording/listening device, gave Wilson a twenty dollar bill with which to make a purchase, and instructed Wilson where to make the purchase. Wilson drove to the area indicated and purchased a "rock" of crack cocaine from Baker, paying with the twenty dollar bill. After completing the purchase, Wilson left the area and gave officers the cocaine and a description of Baker. Officers then approached Baker, who dropped a twenty dollar bill over a nearby fence. One officer detained and searched Baker, finding a glass "crack pipe" in his pocket, while another officer retrieved the twenty dollar bill and confirmed it was the same bill provided to Wilson. While the officers were detaining and searching Baker, Wilson rode past the scene in a police car and identified Baker as the person who sold him the cocaine. A grand jury indicted Baker on the three charges listed above, and he stood trial. Prior to *voir dire*, Baker made an oral motion in limine seeking to keep the Commonwealth from bolstering Wilson's testimony. Specifically, Baker asked the court

> to prohibit the Commonwealth from improperly bolstering the credibility of the confidential informant.... They can only do what's allowed under Rule 608, which is reputation or opinion, and I don't want to hear any of this testimony along the lines of—he's proved to be correct in the past because that's all specific events, extrinsic evidence, which is prohibited by KRE [1] ... 608.

The Commonwealth attorney responded that

> at this point I had not anticipated asking that particular line of questioning [sic].

---

1. Kentucky Rules of Evidence.

I did plan on asking him [Wilson] as well as the detective, Sergeant Simmons, if he's testified in the past, those kinds of things. But that was as far as I was going with it at this point in time. If circumstances arise that the Commonwealth feels it needs to go further or ask additional questions ... then I will approach before I go into that line of questioning.

The court did not rule on Baker's motion but asked Baker's counsel if he "could live with that" and counsel responded that he could. Following that agreement, the parties selected a jury and proceeded with trial.

Baker's complaints on appeal center around the testimony of the Commonwealth's first witness, Sergeant Mark Simmons (Simmons). Simmons testified that he has been involved in more than one thousand investigations regarding illegal drugs, and that he often uses confidential informants. In this case, Simmons testified that he used Wilson, a paid informant. Without objection from Baker, and in keeping with the pre-trial agreement, Simmons testified that he had used Wilson in the past and that Wilson had worked as a paid informant since the late 1980's.

Approximately five minutes later, the Commonwealth re-visited this line of questioning. Because it is key to this opinion, we set forth that testimony and related bench conferences in some detail.

When the Commonwealth asked Simmons how many times Wilson had been used as an informant, Baker's counsel asked if the parties could approach the bench. The following discussion took place:

Baker's counsel: This is the kind of thing I was talking about in my motion in limine. I think this is improper bolstering.

Commonwealth: All I'm asking him is how many times he's used him and has he testified in court, which I had indicated this morning I would ask those questions. I'm not asking what's the result of those cases. I'm not asking any of those kind [sic] of things but he's entitled to indicate that he has used him before.

Baker's counsel: He's already testified to that. The specific number of occasions is probably more prejudicial than probative. It at least suggests credibility, certainly.

Commonwealth: I think that's certainly permissible. I'm not asking him if he's proved reliable in the past, which we have done in other cases. I'm not asking him that. I'm not asking what the results ... have been. But he's certainly entitled to say we have used him on several occasions. My follow-up question ... has he testified before? That's it. He's certainly [entitled] to answer those questions.

Referring to KRE 608, the court stated that the Commonwealth's question went "more to factual background" than opinion or reputation for credibility. The court indicated the question would not "invite a response by Sgt. Simmons about what he thinks the reputation of the guy is ... what his opinion of his reputation is." The court went on to state that the Commonwealth was entitled to show that Wilson had been used in the past and why he was used.

Baker's counsel then argued that the question had no relevance and that any relevance would be outweighed by the prejudicial nature of the evidence. The court disagreed and permitted the Commonwealth to proceed with its questioning of Simmons. That testimony follows.

Commonwealth: Sgt. Simmons, I was asking you about your use of Robert

Wilson. Do you know about how many times you have used him as an informant?

Simmons: I can estimate it's been over 200 cases that he's made for us.

Commonwealth: And has he testified in court regarding the buys that he has made?

Simmons: Yes, ma'am.

Commonwealth: Does he perform work just for the Lexington police department?

Simmons: No, ma'am. He works with other agencies as well.

Baker's counsel: Can we approach, your honor?

During the ensuing bench conference, the following took place:

Baker's counsel: She specifically said she was only going to ask two more questions, and she asked a third question based on the specific same line. So I object and move for a mistrial on the grounds the question shouldn't have been asked. Did you not stand here ... ten seconds ago and say, "I'll ask two questions—how many times, has he ever testified?"

Commonwealth: I did not have my list of questions with me, first of all. Second of all, I did not specifically—your— the motion in limine was going specifically to what do you think about his reputation? What do you think about his credibility? Has he done a good job in the past in terms of conviction rate? I mean, that's where you're going in terms of asking ...

Court: What would be the objection to the "Have you [sic] worked for other agencies?"

Baker's counsel: I mean, it's a specific incidence of conduct used to bolster credibility which can't be proved by ex-trinsic evidence. 608(b) is crystal clear on that.

Commonwealth: If I specifically asked, did he testify in this particular case— what was the result in that case? That's a specific incident of conduct ... the same way I'm asking about—tell me about your employment, tell me about how long you've been with the police department. The same questions I can ask Mr. Baker [sic]—have you testified? Or, have you worked for the police department before? Every one of those goes to him, his background ...

Baker's counsel: Articulate a defensible ... how that is relevant that he ... works for other organizations.... How is that relevant?

Commonwealth: Because it distinguished him as a person who does this kind of work versus somebody we just dragged up off the street and sent in there. The jury's entitled to know who he is.

Court. I'm going to overrule the objection. I've looked again at 608(b). I don't think that a general question about—does he work for other agencies—I don't think that's the specific instance of the conduct of a witness that's addressed in 608(b). So I'm going to overrule the objection.

Simmons then testified that Wilson did work for other agencies.

In addition to the preceding, Simmons testified regarding the drug buy and Baker's arrest. Because that testimony is not particularly pertinent to this appeal, we will not summarize it.

The Commonwealth next called Wilson. Wilson testified that he had been a paid informant for the Lexington–Fayette County Police Department since the early 1980's, that he had previously testified on behalf of the Commonwealth, and that he also worked for another police agency.

Wilson stated that, on January 11, 2007, Simmons called him and asked him if he would be willing to try to purchase illegal drugs as part of a police operation. Wilson agreed and, after being searched and equipped with a recording device, he drove through a Lexington neighborhood in search of drug dealers.

Wilson testified that Baker and a woman flagged him down, approached him, and told him to pull off onto a nearby street. Wilson did so. Wilson and Baker had a discussion about drugs then Baker and the woman walked down the street to an apartment. The woman returned and got into Wilson's car. Baker then returned, got into Wilson's car, showed the cocaine to Wilson, and Wilson gave Baker the twenty dollar bill in exchange for the cocaine. After some additional discussion about "sexual favors" and the purchase of additional cocaine, Baker and the woman got out of the car, and Wilson drove away.

After making the purchase, Wilson returned to meet with the police, and gave the officers the cocaine. Officers stopped Baker and his companion, and Wilson returned to the scene and identified Baker as the person from whom he purchased the cocaine. At trial, Wilson also identified Baker and authenticated an audio tape of the transaction, which the Commonwealth played to the jury.

After Wilson testified, other police officers testified regarding Baker's detention and arrest and that Baker had been observed throwing the "marked" twenty dollar bill onto the ground. Baker did not testify and, as noted above, a jury convicted him on all charges.

## STANDARD OF REVIEW

The standard of review on evidentiary issues is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007); and *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). With this standard in mind, we address the sole issue raised on appeal.

## ANALYSIS

On appeal, Baker argues that the admission of Simmons's testimony about: (1) how many times he used Wilson as an informant; (2) whether Wilson had previously testified in court; and (3) whether Wilson worked for other agencies as an informant was error under KRE 404 and 608. Because the questions and answers to those questions differ in impact, we address them separately.

We begin our analysis by examining the law, which is common to all three questions/answers. KRE 404 provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except" as provided in KRE 607, 608, and 609. Because neither KRE 607 nor 609 apply, we only address KRE 608. KRE 608(a) provides that

[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

KRE 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the wit-

ness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." However, such instances of conduct may be inquired into on cross-examination if they concern "the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

As noted by the parties, the most recent and most nearly similar Supreme Court of Kentucky opinion dealing with the preceding rules of evidence is *Fairrow v. Commonwealth*, 175 S.W.3d 601 (Ky.2005). In *Fairrow*, as herein, the Commonwealth questioned a police officer regarding his use of an informant. Specifically, the Commonwealth asked the officer if he had used the informant in the past and if "[t]he cases that she worked ... [had] positive results[.]" The officer responded that he had used the informant "numerous" times and that "[e]very case I am aware of resulted in a conviction." *Id.* at 605. Fairrow argued that this testimony amounted to inadmissible character evidence.

In addressing Fairrow's argument, the Supreme Court first held that the officer's testimony that the informant "was a reliable informant whose work had always resulted in convictions was inadmissible character evidence under KRE 404(a)." The Court then addressed whether the testimony was admissible under KRE 608. Initially, the Court noted that, KRE 608(a)(2) provides that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked[.]" *Id., citing* KRE 608(a)(2). Because the officer was the first witness and the informant's credibility had not been attacked, any testimony regarding the informant's credibility was not admissible under KRE 608(a). *Id.* at 606. However, the Court noted that, when the informant did testify, her credibility was

attacked; therefore, the admission of credibility evidence prior to that attack was harmless. *Id.*

The Court did not stop its analysis there, noting that the officer's testimony went to the informant's reliability, not to her character for truthfulness. Under a "reliability" analysis, the Court determined that the testimony was inadmissible for two reasons. First, the Court stated that "[t]he evidence was offered to prove that [the informant] had accomplished two more successful 'buys' from [Fairrow] for which he should be convicted." The Court concluded that admission of the testimony for that reason was error.

Second, the Court held that, "[i]n limited circumstances, specific instances of conduct may be admissible as character evidence." Those circumstances—when a person's character is an essential element of a charge, claim, or defense under KRE 405(c); and when elicited on cross-examination under KRE 608(b)—were not present. *Id.* at 607. Therefore, the Court concluded that the officer's testimony that the informant's "work with the police always resulted in convictions was inadmissible." *Id.* In so doing, the Court cited favorably to *United States v. Murray*, 103 F.3d 310, 321–23 (3d Cir.1997), wherein the United States Third Circuit Court of Appeals held that testimony about an informant's reliability violated Federal Rule of Evidence 608(b), which is essentially the same as KRE 608(b). Having determined that the trial court erred, the Supreme Court did not reverse because Fairrow had not properly preserved the issue and the error was not palpable.

■ With the preceding in mind, we address the arguments made by Baker and the Commonwealth. Initially, we note that we agree with the Commonwealth that Baker waived any objection to the Commonwealth's question regarding whether

Wilson had testified in the past. The trial court specifically asked Baker's counsel if he "could live with" that question and he responded that he could. Therefore, he cannot now argue that question was improper.

██ We also agree with the Commonwealth that there is a difference between *Fairrow* and the case herein. In the case herein, the Commonwealth did not specifically ask Simmons whether Wilson had been effective or reliable in the past. Therefore, the Commonwealth did not violate the specific prohibition set forth in *Fairrow*. However, the questions by the Commonwealth and the answers given by Simmons implied what the Commonwealth could not ask outright—that Wilson was both reliable and effective. Thus, the issue before us is whether the Commonwealth's questions and Simmons's answers regarding the number of cases in which Simmons used Wilson and whether Wilson worked for any other agencies violated the spirit of *Fairrow*. We hold that they did.

The trial court determined that the first question, how many times Simmons had worked with Wilson in the past, sought permissible background information. We agree with the trial court that the question, in and of itself, simply sought background information. Furthermore, such background information is admissible so that a jury has some context within which to make its judgments. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 2.05[3] at 81 (4th ed.2003). However, we disagree with the trial court's assessment that such a question would not invite an inappropriate response. Simmons's answer, that Wilson had "made" more than 200 cases, went directly to Wilson's reliability and was the type of evidence the Supreme Court condemned in *Fairrow*. Therefore, while the question may not have been impermissible, the

question, coupled with Simmons's answer, was impermissible and it was error for the trial court to admit Simmons's answer in evidence.

In defense of the second question at issue—whether Wilson worked for any other law enforcement agencies—the Commonwealth made two arguments at trial. First, the Commonwealth stated that it was simply asking Simmons the same questions about Wilson's background that it could ask Wilson. That may be true; however, a question that is appropriate for one witness is not necessarily appropriate for another. For example, a witness who is not testifying as an expert may give only limited opinion testimony. KRE 701. Therefore, a question appropriate for an expert would not be appropriate for a non-expert witness. Similarly, questions to Wilson about his background may be appropriate while those same questions to Simmons may amount to bolstering. Therefore, that argument by the Commonwealth is not persuasive.

The second argument the Commonwealth made was that the question was designed to establish that Wilson was "a person who does this kind of work versus somebody we just dragged up off the street and sent in there." Thus, the Commonwealth was arguing that Simmons's testimony was necessary to establish Wilson's credentials, in other words, to prove his reliability. As admitted by the Commonwealth at trial, it was trying to accomplish precisely what *Fairrow* forbids. Therefore, we hold that the trial court erred when it permitted the Commonwealth to ask Simmons whether Wilson worked for any other law enforcement agencies and when it permitted Simmons to respond as he did.

██ Having determined that the trial court erred when it admitted Simmons's answer that Wilson "made" more than 200

cases and when it permitted the Commonwealth to ask Simmons if Wilson worked for other agencies, we must next determine whether these are reversible errors. Having reviewed the evidence as a whole, we conclude that they were not.

KRE 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" In other words, a defendant is entitled to a fundamentally fair trial, not a perfect one. *Chumbler v. Commonwealth*, 905 S.W.2d 488, 504 (Ky.1995). To decide if an error or errors denied a defendant a fundamentally fair trial, the court must determine if, looking at the case as a whole, there is a substantial possibility that the evidence complained of contributed to the conviction. *Jarvis v. Commonwealth*, 960 S.W.2d 466, 471 (Ky.1998); *see also Commonwealth v. McIntosh*, 646 S.W.2d 43, 45 (Ky.1983). "[I]f upon consideration of the whole case it does not appear that there is a substantial possibility that the result would have been any different, the error will be held non-prejudicial." *Gosser v. Commonwealth*, 31 S.W.3d 897, 903 (Ky. 2000).

We have held that the trial court erred when it permitted the Commonwealth to ask two questions and when it permitted Simmons to respond to those questions. We must now determine if those errors had a substantial impact on the result. In doing so, we look to all of the evidence, absent those two answers. With regard to his "background," Wilson testified that he had worked as an informant since the early 1980's; that he was paid for his work; that he had worked with Simmons on a number of occasions; that he worked for other law enforcement agencies; and that he had testified in the past. With regard to his efforts in this case, Wilson testified that he was searched before and after his encounter with Baker; that he was wearing a "wire" so that the encounter could be recorded; that the transaction was being monitored by the police; that he purchased crack cocaine from Baker with the twenty dollar bill provided to him by Simmons; and that he identified Baker immediately after the purchase. One of the arresting officers testified that he saw Baker drop a twenty dollar bill over a fence; that he recovered the bill; that the bill matched the one that had been given to Wilson; and that Baker had a crack pipe in his pocket when arrested. Although we believe the Commonwealth's questions and Simmons's answers were improper and unnecessary, particularly in light of Wilson's unrebutted testimony on the same issues, in light of the overwhelming evidence of Baker's guilt, we cannot say there is a substantial likelihood the jury would have come to a different conclusion absent those errors. Therefore, we affirm the trial court.

Finally, we feel compelled to comment on the Commonwealth's actions in this case. First, we note that, while we held that the errors in this case were harmless, it was a close call and the result may not always be so favorable to the Commonwealth. The Commonwealth could have and did obtain the same testimony from Wilson regarding his background that it obtained from Simmons. Therefore, the Commonwealth had no need to tread on the fine line between admissible background information and impermissible bolstering, potentially jeopardizing an otherwise appropriate conviction.

Second, we note that the Commonwealth twice violated agreements it had made. As noted above, the Commonwealth stated that it would only ask Simmons general questions about whether he had worked with Wilson and whether Wilson had testified in the past. It agreed that, if it felt

the need to go beyond that, it would approach the bench and receive permission before proceeding. However, the Commonwealth went beyond the agreed-to parameters when it asked how many times Simmons had worked with Wilson, without first approaching the bench. Then, after agreeing that it would ask only two more questions, the Commonwealth asked a third. This behavior by the Commonwealth is troublesome and we encourage the trial court to control it.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

ALL CONCUR.