# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 2, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000020-MR

MARZUQ LABIB NASIR-AL-DIN      APPELLANT

ON APPEAL FROM DAVIESS CIRCUIT COURT
V.      HONORABLE JOSEPH W. CASTLEN, III, JUDGE
NO. 13-CR-00386

COMMONWEALTH OF KENTUCKY      APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Daviess County Circuit Court jury convicted Marzuq Nasir-Al-Din of: assault in the second-degree; tampering with physical evidence; and of being a second-degree persistent felony offender (PFO), enhancing his sentence to twenty-years' imprisonment. Nasir-Al-Din appeals his conviction as a matter of right under Ky. Const. § 110(2)(b). Before this Court, Nasir-Al-Din argues the trial court committed reversible error: (1) by threatening a witness with contempt in front of the jury; and (2) by allowing the Commonwealth to play a prior statement of a witness without requiring proper foundation. Having reviewed the record and the parties' arguments, we affirm.

### I. BACKGROUND.

On May 15, 2013, William Dixon was shot in the arm outside of his residence on Plum Street in Owensboro, Kentucky. Dixon went to the hospital and was treated for a gunshot wound to the arm. Police responded to a report

of a shooting in the area and spoke to George Smith, who was outside when the shooting occurred. After speaking with Smith, the police went to a nearby apartment which belonged to Nasir-Al-Din's girlfriend, Ashley Reynolds, to look for Nasir-Al-Din. The police found Nasir-Al-Din inside Reynolds's apartment, took him into custody, obtained a warrant; and searched Reynolds's apartment. In the apartment, police found a handgun hidden in the bathroom, which they later identified as the gun used to shoot Dixon.

At trial, Nasir-Al-Din testified that he knew Dixon and, although they were not friends, they hung around in the same area. On May 15, 2013, Nasir-Al-Din heard Dixon making derogatory comments regarding his religion, Islam. Although he initially ignored the comments, Nasir-Al-Din eventually became angry, asked Dixon why he was being so disrespectful, and told Dixon to stop. However, Nasir-Al-Din testified that he was not angry enough to shoot Dixon, had not threatened to kill Dixon, and had left the area before the shooting occurred.

Nasir-Al-Din stated that, as he was walking away, he heard shots and then saw a car speeding down a nearby alley. Although he was not sure who had been shooting or who had been shot, Nasir-Al-Din feared someone might be coming after him so he went into the alley. In the alley, Nasir-Al-Din found a handgun lying on the ground, which he testified he picked up so that he could protect himself.

Ultimately, the jury did not believe Nasir-Al-Din's story that he was not present when Dixon was shot and found him guilty of assault in the second-

2

degree, tampering with physical evidence for hiding the gun in Reynolds's apartment, and of being a second degree PFO. We address additional facts below as necessary.

## II. ANALYSIS.

### A. The Trial Court's Warning to Dixon that He Risked Contempt, Made in the Presence of the Jury, Was Not Error.

At trial, the Commonwealth called Dixon to testify regarding the shooting. Dixon testified he remembered that he had been shot in the arm and that he had been treated at the hospital for a gunshot wound. However, despite repeated questions by the Commonwealth, Dixon denied having any other memories regarding the shooting. Because of Dixon's reluctance to answer questions, the Commonwealth asked for "permission to lead," which the trial court granted. The Commonwealth then continued to question Dixon about who shot him, and, after repeatedly skirting the Commonwealth's questions, Dixon stated, "I plead the Fifth. I don't have nothing else to say."

The Commonwealth and Nasir-Al-Din's counsel then approached the bench to discuss Dixon's assertion of his right not to testify. The Commonwealth advised the court that, as the victim, Dixon had not been charged with any crime. Furthermore, the Commonwealth stated that there were no charges pending against Dixon; therefore, Dixon had no basis for asserting his right not to testify, and the Commonwealth asked the court to admonish Dixon accordingly. Nasir-Al-Din's counsel argued that Dixon was entitled to assert his right not to testify because he was fearful of future

3

criminal charges, and the Commonwealth simply did not like the answers Dixon gave.

Following the bench conference, the trial court directed Dixon to respond to the questions posed to him by the Commonwealth and by Nasir-Al-Din's defense counsel, stating: "Mr. Dixon, the court is going to direct that you respond to the questions posed to you [by the Commonwealth] and later those which will be posed to you by [defense counsel]. The court has been provided no basis whatsoever to show any reason why you could invoke any immunity from testimony . . . and by a failure to respond, you are subjecting yourself to contempt." Dixon asked how long his punishment might be for such contempt, and the trial court responded that it could "go on for quite some time."

The Commonwealth then asked Dixon if he had argued with Nasir-Al-Din, which Dixon denied. When the Commonwealth again asked Dixon if Nasir-Al-Din had shot him, Dixon responded that he did not know who shot him and concluded his testimony by stating that, even if he knew who shot him, he would not say. Nasir-Al-Din argues that the trial court unduly prejudiced him and committed reversible error when, in the presence of the jury, it threatened to hold Dixon in contempt if he did not answer the questions he was asked. The Commonwealth argues that this issue is unpreserved, and that Nasir-Al-Din's argument relies on an inadequate and misleading narrative of the events precipitating the contempt warning by the trial court.

As to the issue of preservation, the Commonwealth is correct that objections must be made contemporaneously and appropriately. Kentucky

4

Rule of Criminal Procedure (RCr) 9.22. At trial, Nasir-Al-Din's counsel argued that Dixon should have been permitted to assert his right not to testify. However, Nasir-Al-Din's counsel did not object to the trial court's admonition, an issue he raises for the first time on appeal. Therefore, the issue is unpreserved and we review it for palpable error under RCr 10.26. A palpable error "affects the substantial rights of a party . . . and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr 10.26. "A reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable" to the point of causing manifest injustice. *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006), *as modified* (May 23, 2006).

Nasir-Al-Din now argues that the trial court's admonition to Dixon, in the presence of the jury, violated the judge's duty to remain impartial and perform his or her duties in a manner that does not show bias or prejudice. SCR 4.300(5). The Supreme Court of the United States has held that a judge "may analyze and dissect the evidence, but he may not either distort it or add to it" and must "use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.'" *Quercia v. United States*, 289 U.S. 466, 470-71 (1933) citing *Starr v. United States*, 153 U.S. 614, 626 (1894). We echoed this sentiment holding that a trial judge "cannot by the form of his question or his

5

manner indicate to the jury his opinion as to the credibility of the witness being interrogated or the guilt or innocence of the accused." *Terry v. Commonwealth,* 153 S.W.3d 794, 802-03 (Ky. 2005) *citing Caudill v. Commonwealth,* 170 S.W.2d 9, 10 (Ky. 1943).

These cases and others cited by Nasir-Al-Din are instructive as to a judge's duty to be impartial. However, we have reviewed the proceedings and nothing about the judge's admonition showed bias, prejudice, or a violation of the duty to remain impartial. The judge simply directed Dixon, a subpoenaed witness, to respond to the questions posed by the attorneys, something the law requires every witness to do. The judge did not comment on the credibility of Dixon's testimony or on Nasir-Al-Din's guilt or innocence. Thus, Nasir-Al-Din has failed to establish that any error, let alone error causing manifest injustice, occurred or that the result would have been different absent the admonition.

Finally on this issue, we note that Nasir-Al-Din cites the following passage from Kentucky's criminal practice treatise, as support for his argument that the court should have addressed Dixon outside the presence of the jury. The author of the treatise states that:

> Before a sanction other than censure is imposed for contempt which occurs during a trial, however, the court should give the offending person notice of the conduct expected and a clear warning of the consequences of further misconduct. If the conduct persists, the court should give the offending person prompt notice of its intention to consider contempt sanctions. However, to avoid the risk of influencing the deliberations of the jury, the actual contempt proceedings *should* normally be deferred until the conclusion of the trial. For the same reason, whatever action the court takes should ordinarily be out of the presence of the jury.

§ 24:25.Contempt—Procedure, 9 Ky. Prac. Crim. Prac. & Proc. § 24:25 (5th ed.) (emphasis added and footnote omitted).

The preceding, while persuasive, is not binding. Furthermore, as the author of the treatise recommends, the judge did tell Dixon what conduct he expected and gave Dixon fair warning what the consequences for his failure to comply would be. However, the judge did not hold any contempt proceedings, and, although we agree with the author's recommendation that contempt proceedings should be held outside the presence of the jury, there simply were no contempt proceedings. Therefore, Nasir-Al-Din's reliance on the preceding is misplaced.

For the foregoing reasons, we discern no error, palpable or otherwise, in the manner in which the court addressed Dixon's behavior.

## B. The Trial Court Did Not Commit Reversible Error When it Allowed the Commonwealth to Play a Witness's Prior Statement.

The Commonwealth called Smith, a witness to the shooting, to testify about what he saw. Smith testified he was sitting under a tree with Nasir-Al-Din when Dixon and Nasir-Al-Din began "having words." Smith stated that Nasir-Al-Din then left but returned after a short period of time and someone fired a gun. However, Smith testified that the shot came from behind and, although Nasir-Al-Din was the only person in that area, Smith stated that he did not know who fired the shot. This testimony apparently varied from what the Commonwealth anticipated it would be so the Commonwealth then sought and received leave to treat Smith as a hostile witness. The Commonwealth then asked Smith if he had given a statement to police and if that statement

differed from his testimony. Smith stated that he did not remember giving a statement to the police. When the Commonwealth asked him if hearing the statement might refresh his recollection, Smith admitted it might and stated that he would like to hear it.

Nasir-Al-Din's counsel objected arguing that the court should not have permitted the Commonwealth to treat Smith as a hostile witness and that Smith's status as a hostile witness was not sufficient grounds to permit the Commonwealth's playing of Smith's statement. The court disagreed finding that, because Smith was a hostile witness, the Commonwealth was entitled to play his prior inconsistent statement.

Following a short recess, the Commonwealth played the statement, in which Smith identified Nasir-Al-Din as the shooter. When asked about the statement, Smith admitted that the voice on the recording was his; however, he continued to maintain that he did not remember making the statement.

On appeal, Nasir-Al-Din argues that the court should not have permitted the Commonwealth to play Smith's statement or enter it into the record because the Commonwealth had not laid a proper foundation. The Commonwealth argues that this issue is not preserved because, while Nasir-Al-Din's counsel objected to the playing of the statement, she did so for different reasons. In the alternative, the Commonwealth argues that the court did not abuse its discretion.

"This Court is one of *review* which by definition presupposes prior consideration by the trial court. If such has not been done, there accordingly

can be no review by this Court." *Todd v. Commonwaelth*, 716 S.W.2d 242, 251 (Ky. 1986) (emphasis added). "When a party states grounds for an objection at trial, that party cannot assert a different basis for the objection on appeal." *Fairrow v. Commonwealth*, 175 S.W.3d 601, 607 (Ky. 2005). "The critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014). Because lack of a proper foundation was not raised at the trial court level, the issue is unpreserved. However, as we noted earlier, an unpreserved error in the application of the Kentucky Rules of Evidence (KRE) may be reviewed for palpable error using the standard set forth in RCr 10.26. KRE 103(e). Thus, we must determine if permitting the Commonwealth to play Smith's recorded statement resulted in manifest injustice. *Id.*

In regard to the admission of a prior inconsistent statement, KRE 801A(a) states:

> A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is:
>
> (1) Inconsistent with the declarant's testimony[.]

KRE 613, which sets forth the foundational basis necessary for admission of a prior inconsistent statement, states:

> Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it. The court may allow such evidence to be introduced when it is impossible to comply with this rule because of the absence at the trial or hearing of the

9

witness sought to be contradicted, and when the court finds that the impeaching party has acted in good faith.

Nasir-Al-Din argues that the Commonwealth failed to lay a proper foundation because it failed to ask Smith about the circumstances of time, place, and persons present when he made the statement to the police; it failed to show the statement would refresh Smith's memory; and it failed to show that the statement actually refreshed Smith's memory. The Commonwealth argues that a proper foundation was laid and thus no error occurred.

From our review of the record, Nasir-Al-Din's foundational arguments are flawed for two reasons. First, they depend, in part, on his mischaracterization of the evidence. The Commonwealth asked Smith questions regarding the shooting and then asked Smith if he remembered making other statements to police, specifically to Police Officer Bryan Velotta on the day of the shooting. While Smith testified he did not specifically remember speaking with Officer Velotta, he did remember speaking to various police officers that day regarding the shooting. Thus, the Commonwealth did inquire about "the circumstances of time, place, and persons present, as correctly as [it could] present them" meeting the foundational requirements of KRE 613 to admit Smith's prior inconsistent statement under KRE 801A(a)(1).

Second, Nasir-Al-Din's argument that the Commonwealth did not establish that hearing the statement would refresh Smith's memory or that it did refresh his memory are not foundational elements in KRE 613. They are foundational elements for the use of a writing or recording to refresh a witness's recollection under KRE 612. The Commonwealth sought to introduce

10

Smith's statement as a prior inconsistent statement under KRE 801A(a)(1), not to refresh Smith's memory under KRE 612; therefore, the foundational requirements of KRE 612 are not applicable.

Furthermore, as we held in *Shepherd v. Commonwealth*, 251 S.W.3d 309, 321-322 (Ky. 2008), *as modified on denial of reh'g* (May 22, 2008) admission of a prior recorded statement is not error if the statement has been properly authenticated and the defendant had the opportunity to cross-examine the witness. The officer who interviewed Smith properly authenticated that statement and Nasir-Al-Din had the opportunity to cross-examine Smith. Therefore, we discern no error in the court's admission of Smith's statement under either KRE 801A(a)(1) or *Shepherd*.

Finally, we note that Nasir-Al-Din makes a one-sentence argument that "there is no exception to the hearsay rule allowing the entire recorded statement to be entered into evidence." However, he has not pointed us to any law to support this "argument;" therefore, we do not address it.

### IV. CONCLUSION.

For the foregoing reasons, we affirm Nasir-Al-Din's conviction and sentence.

All sitting. All concur.

11

COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Taylor Allen Payne
Assistant Attorney General