# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 28, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2016-SC-000119-MR

MICHAEL TAYLOR                                            APPELLANT

                     ON APPEAL FROM ADAIR CIRCUIT COURT

V.                   HONORABLE JUDY DENISE VANCE, JUDGE

                      NO. 14-CR-00051 AND NO. 14-CR-00052

COMMONWEALTH OF KENTUCKY                           APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A circuit court jury convicted Michael Taylor of two counts of first-degree Trafficking in a Controlled Substance and of being a first-degree Persistent Felony Offender, recommending the maximum 5-years' imprisonment on each trafficking conviction enhanced by PFO I status to 20 years' imprisonment on each count to be served consecutively. The trial court sentenced Taylor to 20 years' imprisonment on each count to be served concurrently and rendered a judgment accordingly. Taylor appeals from that judgment as a matter of right, raising six issues.[1]

---

[1] Ky. Const. § 110(2)(b).

# I. ANALYSIS.

## A. Standard of Review.

For preserved issues, determining the proper standard of review requires a determination of the alleged trial court error. "We review a circuit court's decision to dismiss [or to deny dismissal of] an indictment for an abuse of discretion."[2] Evidentiary rulings are also reviewed for abuse of discretion.[3] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[4] When reviewing a challenge regarding the racial composition of a jury panel, this Court applies the Supreme Court's test in *Duren v. Missouri*[5], as stated by this Court in *Mash v. Commonwealth*[6].

For unpreserved issues, this Court will only overturn the trial court's ruling if "palpable error" exists in that ruling.[7] Palpable error requires a showing that the alleged error affected the "substantial rights" of a defendant, where relief may be granted "upon a determination that manifest injustice has resulted from the error."[8] To find that "manifest injustice has resulted from the error," this Court must conclude that the error so seriously affected the

---

[2] *Commonwealth v. Grider*, 390 S.W.3d 803, 817 (Ky. App. 2012) (citing *Commonwealth v. Baker*, 11 S.W.3d 585, 590 (Ky. App. 2000)).

[3] *McDaniel v. Commonwealth*, 415 S.W.3d 643, 655 (Ky. 2013); *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996).

[4] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

[5] 439 U.S. 357, 364 (1979).

[6] 376 S.W.3d 548, 552 (Ky. 2012).

[7] Kentucky Rule of Criminal Procedure (RCr)10.26.

[8] *Id.*

fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable."[9]

## B. Alleged Discovery Violations.

Taylor argues that the trial court erred when it denied Taylor's multiple motions to dismiss the indictment. We review a trial court's rulings on motions to dismiss an indictment for abuse of discretion.[10] Taylor made these motions because of the Commonwealth's alleged failure to produce discovery timely. According to the record, this issue centers on the production of a police report relating to a charge brought by the Commonwealth against the confidential informant used by the Commonwealth in two controlled buys that form the basis for the charges against Taylor in the case at hand.

Part of Taylor's defense included impeaching the credibility of this confidential informant. Taylor began making discovery motions for the production of exculpatory information on January 5, 2015. On November 17, 2015, Taylor argued that by checking the court records, he became aware of a criminal charge brought against the confidential informant on September 3, 2015, the existence of which the Commonwealth had failed to inform Taylor. Additionally, Taylor averred that the grand jury dismissed the criminal charge against the informant, and Taylor argued that the dismissal could have occurred because of the Commonwealth's favorable treatment of the confidential informant to reward her service to the Commonwealth. Taylor

---

[9] *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).
[10] *Grider*, 390 S.W.3d at 817.

3

requested the Commonwealth produce information regarding this charge against the informant and how it came to be dismissed.

On December 30, 2015, Taylor filed a pro se motion to dismiss the indictment because of the Commonwealth's failure to produce the requested information concerning the informant. He argued that he had not received the requested information with trial beginning on January 5, 2016. On December 31, 2015, the Commonwealth produced over 192 pages of documents of potentially exculpatory material to Taylor, the Commonwealth reporting that it received those documents on December 23, 2015. Taylor's counsel, who was out-of-town for the New Year's holiday, did not actually receive the 192-page production until January 4, 2016, one day before the trial was set to begin.

On January 5, 2016, the day trial began, Taylor renewed his motion to dismiss the indictment for discovery violations. In considering options in light of the motion, the trial court identified two potential remedies other than dismissal—to postpone the trial or to exclude part of the Commonwealth's evidence. Taylor maintained that dismissal of the indictment was the only acceptable remedy because a continuance to give Taylor an opportunity to review the 192 pages of documents would violate his right to a speedy trial, and he did not want any material evidence excluded. Because Taylor rejected all potential remedies short of outright dismissal as suggested by the trial court and because the trial court found that any prejudice suffered because of the Commonwealth's delayed production did not warrant dismissal, the trial court

4

denied Taylor's motion to dismiss for discovery violations, and Taylor's case proceeded to trial. Accordingly, this issue is preserved for appellate review.

As a preliminary matter, no *Brady*[11] violation occurred in this case. The Commonwealth did not fail to turn over potentially exculpatory evidence; rather, Taylor argues that the Commonwealth did not *timely* turn over this potential evidence.

Taylor persistently argues that the Commonwealth's dilatory production violates RCr 7.24, the rule governing "Discovery and Inspection." No subsection of this rule explicitly states that the prosecution must "timely" produce exculpatory material, but RCr 7.24(4) suggests an obligation of the prosecution to do so.[12] Additionally, *Roberts v. Commonwealth* imposes a timeliness obligation.[13] So the Commonwealth does have an obligation to timely turn over potentially exculpatory material. But RCr 7.24 clearly grants discretion to the trial court to fashion appropriate relief for dilatory responses, assuming the defense makes a sufficient showing of a failure to turn over potentially exculpatory evidence and if relief is warranted.[14]

To warrant a dismissal of an indictment, "Generally, a defendant must demonstrate a flagrant abuse of the grand jury process that resulted in both

---

[11] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding denial of due process for prosecutor's withholding of evidence).

[12] RCr 7.24(4) ("It is not a defense against *untimely* disclosure of evidence....") (emphasis added).

[13] 896 S.W.2d 4, 6-7 (Ky. 1995) ("[I]t is imperative that the Commonwealth provide full and timely discovery pursuant to RCr 7.24....").

[14] RCr 7.24(4)-(9), (11).

5

actual prejudice and deprived the grand jury of autonomous and unbiased judgment."[15] "There are certain circumstances where trial judges *are permitted* to dismiss criminal indictments.... These include...prosecutorial misconduct that prejudices the defendant...."[16]

Even assuming Taylor made a sufficient showing to warrant some sort of relief for late production of exculpatory materials, we conclude that the trial court's ruling here did not amount to an abuse of discretion. Recall that Taylor refused to entertain any other form of relief besides a dismissal of his indictment. The trial court discussed the possibility of excluding certain material evidence or granting a continuance in lieu of the extreme remedy of a dismissal of the indictment. The trial court reasonably determined that any prejudice Taylor potentially suffered did not warrant a dismissal—Taylor still had the opportunity to cross examine, and did cross examine at trial, the confidential informant about her criminal history. So we find no error in the trial court's reasonable denial of Taylor's motion to dismiss the indictment for discovery violations and thus affirm the trial court's ruling on this issue.

## C. Alleged Improper Character Evidence.

Taylor argues that the trial court abused its discretion by overruling his objection to the alleged improper bolstering of the confidential informant's credibility before an attack on that credibility occurred at trial and that this

---

[15] *Commonwealth v. Hill*, 228 S.W.3d 15, 17 (Ky. App. 2007) (citing *Bank v. Nova Scotia v. United States*, 487 U.S. 250, 257-60 (1988)).

[16] *Commonwealth v. Bishop*, 245 S.W.3d 733, 735 (Ky. 2008).

6

abuse of discretion amounted to reversible error.[17] During the Commonwealth's direct examination of one of the detectives involved in the controlled buys, the Commonwealth asked why the detective did not search the motel room where the buys were going to occur before Taylor arrived at the scene. As part of his answer, the detective stated that he, "felt like [the confidential informant] was trustworthy and credible and that [this informant] had made many buys in the past." Taylor objected to this testimony, and the trial court overruled the objection. But Taylor did not move to strike the testimony. Though questionably preserved, we will treat this issue as preserved for purposes of our review.

On cross-examination of the detective, Taylor attacked the honesty of the confidential informant and suggested improper motives for the confidential informant's actions. During the Commonwealth's re-direct of the detective, the Commonwealth asked whether the detective found the confidential informant credible, reliable, and trustworthy, to which the detective answered in the affirmative. This line of questioning does not appear to have drawn an objection from Taylor.

Both parties agree that, as a matter of law, the prosecution cannot bolster a witness's credibility before that credibility is attacked.[18] Both parties also agree that it is improper for one witness to testify that another witness is

---

[17] There is question as to the preservation of this issue. But regardless of the standard of review we use, the conclusion is the same—no reversible error is present.

[18] Kentucky Rule of Evidence (KRE) 608.

7

telling the truth; in other words, it is improper for one witness to vouch for the credibility of another witness.[19] Taylor argues that the trial court's denial of Taylor's objection to the detective's statements during direct examination regarding the confidential informant's trustworthiness and credibility amounted to an abuse of discretion and reversible error.

Even where testimony is introduced in error, "...this Court may still determine that the error is harmless pursuant to RCr 9.24 and the standards set forth in *Winstead v. Commonwealth*[20]."[21] "A non-constitutional evidentiary error...is harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."[22] Errors have also been found to be harmless in light of other strong evidence, as there is no possibility the error substantially swayed the jury.[23] "When rehabilitation evidence is admitted before credibility is attacked, any error is harmless as long as credibility is, in fact, later impeached."[24] Regarding this exact type of error, the court in *Fairrow v. Commonwealth*[25] stated, "Nor are we satisfied that the admission of improper evidence of the character of a mere witness affected

---

[19] *Stringer v. Commonwealth*, 956 S.W.2d 883, 888 (Ky. 1997); *Newkirk v. Commonwealth*, 937 S.W.2d 690, 696 (Ky. 1996); *Hall v. Commonwealth*, 862 S.W.2d 321 (Ky. 1993).

[20] 283 S.W.3d 678 (Ky. 2009).

[21] *Harris v. Commonwealth*, 384 S.W.3d 117, 122 (Ky. 2012).

[22] *Id.* at 125 (citing *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009)).

[23] *Wiley v. Commonwealth*, 348 S.W.3d 570, 579 (Ky. 2010); *Hunt v. Commonwealth*, 304 S.W.3d 15, 35 (Ky. 2009); *Winstead*, 283 S.W.3d at 689.

[24] *Reed v. Commonwealth*, 738 S.W.2d 818, 821 (Ky. 1987) (citing *Summitt v. Commonwealth*, 550 S.W.2d 548, 550 (Ky. 1977)).

[25] 175 S.W.3d 601 (Ky. 2005).

8

Appellant's substantial rights and constituted manifest injustice so as to require reversal as palpable error."[26]

The cases most analogous to the case at hand are *Commonwealth v. Wright*[27] and *Fairrow v. Commonwealth*[28]. In *Wright,* an officer made numerous statements during his testimony as to the credibility of a confidential informant.[29] The court found no error in the admission of the officer's testimony.[30] In *Fairrow,* the Commonwealth actually elicited testimony from an officer as to the credibility of a confidential informant, directly asking the officer to testify on this matter.[31] Holding that this did not amount to reversible error, the Court stated, "Nor are we satisfied that the admission of improper evidence of the character of a mere witness affected Appellant's (defendant's) substantial rights and constituted manifest injustice so as to require reversal as palpable error."[32] *Fairrow* and *Wright* support our conclusion that, while allowing the testimony may have amounted to an error, it did not amount to reversible error because of this case's analogous factual circumstances to *Fairrow* and *Wright.* Additionally, the defendant did attack the confidential informant's credibility on cross-examination, the exact scenario *Reed* held to be harmless. We affirm the trial court in all respects on this issue.

---

[26] *Id.* at 606.

[27] 467 S.W.3d 238, 247-48 (Ky. 2015).

[28] 175 S.W.3d 601, 605-07 (Ky. 2005).

[29] *Wright,* 467 S.W.3d at 247-48.

[30] *Id.*

[31] *Fairrow,* 175 S.W.3d at 605.

[32] *Id.* at 607.

## D. Alleged KRS 532.055 Violation.

Taylor alleges palpable error occurred when the Commonwealth's witness mentioned an amended charge in violation of KRS 532.055(2)(a)(2) and *Blane v. Commonwealth*[33]. The circuit clerk testified about Taylor's prior convictions. During his testimony, the clerk testified that one of Taylor's convictions included facilitation to first-degree assault, which was amended from first-degree assault. This issue is unpreserved, so we review this issue for palpable error.

KRS 532.055(2)(a)(2) states, "Evidence may be offered by the Commonwealth relevant to sentencing including: The nature of prior offenses for which he was convicted."[34] "KRS 532.055(2)(a) permits the introduction of prior convictions of the defendant, not prior charges subsequently dismissed."[35] "For purposes of the penalty phase, criminal charges that have subsequently been amended are the functional equivalent of dismissed charges, which we have established to be impermissible as evidence in a sentencing hearing."[36]

While the clerk's testimony regarding amended offenses was improper, it did not rise to the level of palpable error. A simple inadvertent mention of an

---

[33] 364 S.W.3d 140, 152-53 (Ky. 2012).

[34] KRS 532.055(2)(a)(2).

[35] *Robinson v. Commonwealth*, 926 S.W.2d 853, 854 (Ky. 1996).

[36] *Blane v. Commonwealth*, 364 S.W.3d 140, 152-53 (Ky. 2012) (citing *Chavies v. Commonwealth*, 354 S.W.3d 103, 115 (Ky. 2011) (abrogated on other grounds by *Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015)).

10

indictment with amended charges does not amount to palpable error.[37] If "the amended offenses were never pointed out to the jury by the trial judge, the Commonwealth, or the Commonwealth's witness...we cannot find that the erroneous introduction of prior amended...charges seriously affected the fairness of the proceeding."[38] This Court found palpable error in *Blane* when "the Commonwealth not only elicited the testimony from the deputy circuit clerk regarding the original charges, but it also emphasized the prior amended charges in its closing argument to the jury."[39] In a situation where a defendant receives a "jury's recommendation of the maximum sentence on each of the underlying charges...prejudice can be presumed," but "the facts presented in [the] case" must still be taken into account.[40]

While the error here was not as innocent as the error in *Chavies*, and even though prejudice can be presumed in this case, the error in this case does not approach the standard of palpable error set forth in *Blane*. Here, the clerk simply mistakenly testified about Taylor's amended charge. Although prejudice can be presumed, the Commonwealth did not elicit that testimony, nor did it emphasize Taylor's amended charge to the jury at any point, as the Commonwealth did in *Blane*. So even though we are to presume prejudice, because the factual circumstances of this case significantly differ from *Blane*,

---

[37] *Chavies*, 354 S.W.3d at 115-16.

[38] *Id.*

[39] *Blane*, 364 S.W.3d at 153.

[40] *Id.* at 152-53.

11

looking at the totality of the circumstances, no palpable error occurred, and we affirm the trial court on this issue.

**E. Alleged Improper Cross Examination Questioning.**

Taylor alleges palpable error when the Commonwealth inquired as to the identification of the offense for which Taylor was on parole. Taylor called his parole officer in as a witness. Taylor inquired as to the nature and extent of the parole officer's supervision over Taylor, in addition to eliciting favorable character testimony. Before cross examination, the Commonwealth requested a bench conference. The Commonwealth told the trial court that it believed Taylor opened the door for inquiry to questioning about the specific crime of which Taylor was convicted that resulted in his being on parole. Taylor objected only to any inquiry "regarding how much time Taylor had on the shelf," not to an inquiry into Taylor's specific charges. The Commonwealth then asked Taylor if it could inquire as to what Taylor was on parole for, and it appears from the record that Taylor nodded in agreement. Therefore, the trial court allowed the Commonwealth to ask the parole officer for what offenses the defendant was on parole. This issue is thus unpreserved.

This Court deems this issue to have been waived by Taylor. This Court in *West v. Commonwealth* acknowledged the waiver rule stated in *Salisbury v. Commonwealth*:

> When a defendant's attorney is aware of an issue and elects to
> raise no objection, the attorney's failure to object may constitute a
> waiver of an error having constitutional implications. The
> defendant's counsel cannot deliberately forego making an objection

12

to a curable trial defect when he is aware of the basis for an objection."[41]

After "[o]bserving that the record failed to reveal the reason for counsel's failure to object, whether tactical, deliberate, or inadvertent...the Court held that palpable error had not been demonstrated."[42]

In this case, waiver of this issue is clear. Taylor did not make any objection to the Commonwealth's inquiry into the nature of the offense for which Taylor was on parole; in fact, the record suggests that Taylor agreed that this question could be asked. Even if Taylor did not actually agree that this question could be asked, both parties conferred with the trial court during a bench conference to discuss the potential issue, giving Taylor ample knowledge of the potential issue and time to make an objection. We conclude this issue was waived and that no palpable error exists; thus we affirm the trial court.

## F. Alleged Improper Sentencing.

Taylor alleges the trial court abused its discretion when it denied Taylor's motions attacking the use of his 2007 conviction to obtain the first-degree felony offender status. Taylor argues here a violation of KRS 532.080(10).

KRS 532.080(10)(a) prohibits the application of the persistent felony offender statute "to a person convicted of a criminal offense if the penalty for that offense was increased from a misdemeanor to a felony, or from a lower felony classification to a higher felony classification because the conviction

---

[41] *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky. 1989) (quoting *Salisbury v. Commonwealth*, 556 S.W.2d 922, 927 (Ky. App. 1977)).

[42] *Id.* at 602-03.

13

constituted a second or subsequent violation of that offense." KRS 532.080(10)(b)(2) states that (10)(a) "shall not prohibit the application of this section to a person convicted of...[a]ny other felony offense if the penalty was not enhanced to a higher level because the Commonwealth elected to prosecute the person as a first-time violator of that offense."

Although the Commonwealth indicted Taylor for a second-offense trafficking in a controlled substance, first-degree, which would have violated KRS 532.080(10)(a), the Commonwealth amended this indictment before trial and elected to try Taylor as a first-time violator of the offense, invoking KRS 532.080(10)(b)(2)'s statutory protection. The jury ultimately found Taylor guilty under instructions for a first-time offense. Accordingly, no violation of KRS 532.080(10)(a) occurred.

Taylor's claim that the Commonwealth did not meet its burden of proof has no merit. The record shows ample testimony supporting the jury's verdict of conviction. So we affirm the ruling of the trial court on this issue.

**G. Fair Cross-Section Claim.**

Taylor essentially challenges the racial composition of the jury that tried him, alleging that the African American population was underrepresented. Over the course of the proceedings, he requested a fair cross-section of the community in several motions, all of which the trial court denied. Taylor, who is African American, claimed that out of 75 persons who reported in the venire, only one was African American and one was Mexican American. In denying Taylor's motions, the trial court responded that the venire was drawn randomly

14

and that she could not control who was in the venire. We will treat this issue as preserved for our review.

This Court reviews fair cross-section claims according to the defendant's burden to show the following:

> To succeed on a challenge to the racial composition of the jury panel, a defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[43]

Taylor satisfies the first prong of this test—there is no question that the group alleged to be excluded, African Americans, is a distinctive group in the community. According to Taylor, African Americans only comprise 3% of the population of Adair County. But this very fact supports the Commonwealth's point that Taylor's argument fails under the second prong of the *Mash* test.

Taylor himself states, "If 75 persons were in a jury panel, at least 2.25 jurors should be African American." The record shows the impaneling of one African American. Statistically, Taylor is correct. But a venire consisting of one less African American than statistically indicated is not unfair, nor unreasonable.

Taylor argues the impossibility of proving the third prong because the Commonwealth of Kentucky does not collect the information Taylor would need to meet his burden of proving the third prong. But Taylor has not shown

---

[43] *Mash,* 376 S.W.3d at 552 (citing *Duren,* 439 U.S. at 364).

15

exhaustion in seeking out other ways of proving the third prong. And because Taylor fails the second prong, we do not reach the third one.

Because Taylor fails the second prong of the *Mash* test, we affirm the trial court's denial of Taylor's challenge to the racial composition of the jury.

## II. CONCLUSION

Finding no merit to any of the issues raised on this appeal, we affirm the judgment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Gregory C. Fuchs
Assistant Attorney General